Bv the Court. Duer, J.
We apprehend that no rule of the law merchant is more fully settled, than that which affirms the title of a bond fide holder, for value, of negotiable paper, notwithstanding the person by whom it was transferred to him, had acquired its possession by felony or fraud; nor do we at all doubt that the salutary rule is just as applicable to paper transferable only by endorsement, as to that transferable by delivery alone; it is just as applicable to bills of exchange and promissory notes, payable to order, as tc/bank bills, payable to bearer. That such is the law is declared, or necessarily implied, in nearly every case, having any bearing on the question, that is to be found in the books, including those which, upon the argument, were cited, and mainly relied on, by the counsel for the defendant; and, using the very words of the Supreme Court of the United States, we hold ourselves justified in saying, that “ the doctrine is so well and so long established, that it is laid up among the fundamentals of the law, and neither reasons nor authorities are now necessary to be brought forward in its support.” (Swift v. Tyson, 16 Peters, p. 1.) It is true, that the plaintiff purchased the note in suit after it became due, and if Palmer, from whom he made the purchase, had no right to transfer it, he cannot recover; but if the title of Palmer was unquestionable, that of the plaintiff cannot be impeached. He stands in the place of Palmer, and has succeeded to all Palmer's rights and remedies.
The first question, therefore, is, whether, upon the evidence, we are not bound to say that Palmer was an endorsee for value, and without notice, and, consequently, whether, as the facts were undisputed, the jury ought not to have been instructed that the plaintiff was entitled to their verdict against both defendants. Palmer was the only witness by whom the transfer of the note was proved, and he was uncontradicted and unimpeached.
We must, therefore, regard it as certain, that the note came into Palmer’s hands before it was due, and that he gave value for it *269 when he received it; nor, unless he had actual or constructive notice of the fraud of Parker, is his good faith, in thus receiving it, liable to question. That he had actual notice is not pretended, and we are clearly of opinion, that no circumstances were shown that ought to have awakened his suspicions, and put him upon inquiry, and, consequently, that there was no ground for imputing to him a knowledge that was not proved.
It has, however, been contended, that, admitting that the facts attending the transfer of the note were exactly such as stated by Palmer, we are still bound, by prior decisions, to say that he acquired no title, ap.d could, therefore, pass none to the plaintiff. It appears, it is said, that the note was not received by him in the usual course of his business, and. that the consideration for its transfer was not full, and was usurious, and each of these circumstances, it is insisted, is of itself, a bar to the plaintiff’s recovery. We are far from thinking so.
In every action, by a holder for value, of negotiable paper, which has been put into circulation by fraud, it, is, doubtless, a proper inquiry, whether the bill or note was taken by him in the ordinary course, not of his own business, but of similar transactions ; for, where it appears that the circumstances accompanying the transfer, were unusual, the question, whether they ought not to have awakened his suspicions, and put him upon inquiry, in other words, whether they did or did not amount to constructive notice, must be submitted to the determination of the jury. But it is a mistake to suppose that the protection, which the law extends to a bona fide holder for value, is limited to a particular class of persons ; to those only who deal in negotiable paper, as a part of their regular and ordinary business, such as merchants, bankers and brokers. As we understand the law, the protection of the rule extends to every person to whom negotiable paper may be lawfully transferred; to every person, who, by the payment of value, may acquire a title.
The objection that there was not a full and fair consideration for the transfer of the note in suit, is contradicted by the evidence. If the debt, cancelled by Palmer, is added to the sum which he' paid inz-cash, the amount, it is proved, exceeds the face of the note. / The actual satisfaction of a precedent debt, it was decided by this court, in White v. The Springfield Bank, (3 Sand. 222,) is *270 as truly a valuable consideration as the payment of money, and we think, by a recent decision in the Court of Appeals, this is now established as the law of the state. (Youngs v. Lee, 2 Kernan, 552.j) But had there been no other consideration proved, for the transfer of the note, than the payment in money, that was made by Palmer, we are not to be understood, as intimating, that the plaintiff would not be entitled to recover. When, in cases like the present, a parting with value is proved, the amount of the consideration is not otherwise important, than as bearing on the question of actual, or constructive, notice. Hence, when usury is not set up as a separate defence, unless it is so gross as to raise the presumption of. fraud, the proof of its existence may be justly disregarded. Where! an accommodation note is purchased at a rate of discount, exceeding that of lawful interest, the transaction, in judgment of law, is usurious, but the mere fact that it is so, is no evidence of the bad faith of the purchaser; is no evidence that he knew, or suspected,/ that the holder of the note, from whom he derived his title, had no right or authority to transfer it. J
The objection that remains to be stated, is, at first view, more plausible than those that have been considered. The plaintiff, it is said, can have no title to the note, unless it was endorsed by Greissenhainer, the payee, and its endorsement by him is disproved by the evidence. It is true, his name, in his own handwriting, is on the back of the note, but the note was never delivered by him, either to Parker, or to any one, either for value, or for the purpose of being negotiated, and to render an endorsement valid, as passing a title, such a delivery is alleged to be essential. In support of this position, we are referred to several cases, in which the courts, in England, have held that a plea, denying the endorsement of a payee, is sustained by proof that the bill or note, on the back of which his name is written, was never delivered by him, with the intent of passing an immediate title, or an authority to transfer it. The authority of these cases, to which several, not cited by defendant’s counsel, might be added, is not meant to be ¡ denied, but upon examining them, it will be found that in not 1 one of them was it proved that the plaintiff was a bona fide holder, j for value, and in most of them it is distinctly admitted that, had ' this proof been given, the defence would not have been allowed to ' prevail. The doctrine, therefore, which these cases establish, is ; *271 this, and only this, that where the non-delivery, by the payee, of , a negotiable bill or note is proved, the burden of showing that: a valid title was acquired, by its subsequent delivery to a holder, without notice, and for value, is cast upon the plaintiff.
The case,uin which the law on this subject seems to have been the most fully considered, is that of Marston v. Allen, in the Court of Exchequer, (8 Mees. & Welsby, 494.) The action was against the acceptor of a bill of exchange, which, the declaration averred, had been endorsed by the payee, John Hanop, to one E. Marston, and by him to the plaintiff. The plea denied the endorsement of the payee. Upon the trial, Hanop was called as a witness for the defendant, and, admitting that his name on the back of the bill was in his own handwriting, swore that he had received the bill as the accountant of a bank, to which it belonged, and that he had delivered it to a clerk, one W. Marston, to be kept by him in safe custody for the bank.
E. Marston, the second endorser, was then called as a witness for the plaintiff, and proved that he had received the bill from W. Marston, for value, and that he had endorsed and delivered it, for value, to the plaintiff To rebut this evidence, the counsel for the defence then offered to show that both E. Marston and the plaintiff had received the bill with full knowledge of the fraud committed by W. Marston, in transferring it. The learned Judge who tried the cause, held that this proof was inadmissible, under the pleadings, and directed the jury to find a verdict for the plaintiff. A new trial was moved for, on the ground that the evidence, so offered, was improperly rejected. The court in bank, after a full argument, being of that opinion, the motion was granted, and a new trial ordered.
Alderson, B., in delivering the judgment of the court, said, (inter alia,) “ that they had been much pressed with the difficulty that there had been a delivery of the bill to the plaintiff for the purpose of transferring it, and, no doubt, (he added,) had this delivery been bona fide, and for value, it would have been quite sufficient to give a title to the plaintiff” He then proceeded to lay down the general rule of law, in the words following: “By the law merchant, every person, having possession of a bill, has, notwithstanding any fraud on his part, in acquiring or transferring it, full authority to transfer said bill, but with this limitation," that *272 to make such transfer valid, there must be a delivery by him, or by some subsequent holder of the bill, to some one who receives such bill, Iona fide and for value, and is himself either the holder, or the person through whom the holder claims.” (Vide, also, Lloyd v. Howard, 20 Law Jour. R. (N. S. p. 1;) 1 Law & Eq. R. 227; Palmer v. Richards, 1 Law & Eq. R. 529; Hardey v. Towers, 4 Law & Eq. R. 531.)
It is obvious that the terms of the rule, thus laid down, were carefully selected, and they plainly embrace the case before us. Parker, notwithstanding his possession and transfer of the note were fraudulent, had full authority to transfer it to a person, receiving it without notice of the fraud, and for value. The evidence shows that it was so received by Palmer, to whom he delivered it, and that Palmer is the person through whom the plaintiff, the present holder, claims.
It follows that the verdict for the defendant is against law and evidence, and must be set aside, and a new trial be ordered; and if, upon the next trial, the evidence shall be the same as upon the first, the jury must be instructed to find a verdict for the plaintiff, for the amount of the note, with interest.
Hew trial, costs to abide event.