## BANGE vs. FLINT and others.

NOTE AND MORTGAGE: *Transfer by separate instrument treated as an indorsement of the note — What constitutes a purchase in good faith — For what amount purchaser at less than par value may foreclose.*

1. Where a negotiable note, and a mortgage securing it, given to a railroad company, were attached to its negotiable bond, which recited that they were transferred as security for, and should be transferable only in connection with, the bond, this was an *indorsement* of the note, within the law merchant. *Crosby v. Roub,* 16 Wis. 616, re-affirmed.

2. Plaintiff, having a running account, with a large balance in his favor, against another person, took such note, bond and mortgage from him at 73 per cent. of the par value, and credited him with the amount as cash. *Held,* a purchase in good faith, for a valuable consideration.

3. On default in payment, plaintiff is entitled to foreclose the mortgage for the full face of the note and interest.

APPEAL from the Circuit Court for *Crawford* County.

Action (commenced in La Crosse county in June, 1866) to foreclose a mortgage given by *Flint*, July 11, 1854, to the La Crosse & Milwaukee Railroad Company, to secure payment of his note of same date for $200, payable to the order of the company, and due January 1, 1864. The note and mortgage were attached by the railroad company to its own bond (payable to the holder) for the same amount, and transferred therewith. That part of the bond which is important here was in the following form, the blanks being appropriately filled: "And for the better security of such payments being made to the holder hereof, the said company has assigned and transferred, and by these presents does assign and transfer, to the said holder of this bond, a certain note for the sum of · dollars, executed by , together with a mortgage given collateral to and for the purpose of securing the payment of the same, dated on the day of ·, payable in ten years from the day of , with interest at the rate of per cent. per annum, which said note and mortgage are hereto appended, and are transferable in connection with this bond, and not otherwise, to any parties or purchasers whomsoever. And the said company do hereby authorize and empower the holder of this bond, at any time, in case said company shall fail to perform any of the foregoing stipulations, by neglecting to pay either principal or interest on this bond, when the same shall become due, to proceed and foreclose the said mortgage, or take such other legal remedy on said note and mortgage against said mortgagor, or against this company, on this present bond, or on both, as shall seem proper and expedient to said · holder hereof. The holder hereof may surrender the same, with the securities and unmatured coupons attached, to the secretary of this company, at any time within five years from the date hereof, and receive in full payment of the prin-

cipal of the same,    shares of the capital stock of said company, fully paid."

The court found that plaintiff was a purchaser of the note and mortgage before due, and in good faith, but held that the mode of transfer of the note was not an indorsement within the law merchant; that defendants had proved a defense good as against the railroad company; and that plaintiff was liable to all the equities existing between the original parties. Judgment for the defendants; and plaintiff appealed.

*E. Mariner* and *David S. Ordway*, for appellant, to the point that he was a purchaser for value, cited *Shufeldt v. Pease*, 16 Wis. 659, and *Rice v. Cutler*, 17 id. 355; and as to the effect of the transfer of the note as an *indorsement*, they relied on *Crosby v. Roub*, 16 Wis. 616.

*Carpenter & Chase*, for respondents, contended that plaintiff was not a holder for value, because he did not receive the note and mortgage in due course of business, did not part with any thing of value at the time he received them, and did not discharge any security previously held by him at the time of receiving them. It was not a *payment* unless expressly so agreed, and a discharge of the preëxisting debt given accordingly. 20 Johns. 637; 20 How. Pr. 308; 31 Barb. 183; 37 id. 458; 2 Sandf. Ch. 166; 1 E. D. Smith, 154; 6 Hill, 93; 13 Wend. 605; 16 id. 659; 12 N. Y. 551; 26 id. 450; 5 Wis. 107; 14 id. 1 and 39; 15 id. 304; 16 id. 325; 18 id. 481. Giving credit on account is not a payment unless expressly so agreed. 1 Denio, 608; 5 id. 558; 1 Cow. 359; 15 Barb. 28; 3 Johns. Cas. 71; 5 Wis. 107; 18 id. 481. It makes no difference that the note credited on account was that of a third person. 9 Johns. 310; 5 id. 68; 11 id. 409; 3 Wend. 66; 4 N. Y. 312; 17 Iowa, 240; 15 Wis. 308; 18 id. 481. 2. Plaintiff was not protected as an indorsee of the note. The transfer upon its face was a *pledge* of the note and mortgage as collateral to the railroad company's bond. 2 Kent, *577. A pledge does

not pass the general property or legal title.   2 Kent, *581.
The word "*assign*," as used in connection with the transfer
of negotiable paper, has a meaning different from that of
"indorse," and conveys a different interest.   Story on
Prom. Notes, § 120 ; 2 Parsons on Notes and Bills, 1, 2, 17,
18, 47, 52–54 ; 9 Barb. 214 ; 16 Wis. 478 ; 18 Iowa, 143.   To
call this transfer an indorsement, is to give a meaning to
the word *allonge* that seems unwarranted outside of the
decision in *Crosby v. Roub*.   2 Parsons on N. & B. 18 ;
Burrill's and Bouvier's Law Dics., title "Allonge ;"
Story on Bills, 204 ; Byles on Bills, *115 ; 18 Pick. 63 ;
18 Iowa, 515 ; 25 id. 520 ; Story on Prom. Notes, §§ 121,
151.   If it is claimed that "*assign*" may mean "indorse,"
rendering it doubtful which sense was intended, then
resort may be had to evidence *aliunde* to show which was
meant ; and the evidence in this case shows that the com-
pany did not design to indorse this note.   2 Cow. & H.'s
Notes, 1358–1362, 1389, 1399 ; Chitty on Con. 74, 79, 80,
104 ; 1 Greenl. Ev. §§ 277, 283, 287, 288, 295 ; 1 Mason,
10 ; 1 Story, 574 ; 19 Johns. 316 ; 8 id. 116 ; 5 Wheat.
326 ; 12 Wend. 573 ; 4 Campb. 385 ; 22 E. C. L. 313.

COLE, J.   The circuit court seemed to suppose that, in
subsequent decisions, this court had intimated a doubt
as to the correctness of the decision in *Crosby v. Roub*,
16 Wis. 616, and that, until the principle of that case was
re-affirmed, the inferior courts were at liberty to treat the
question there decided as an open one.   This certainly is
a misapprehension, so far as the views of the members of
this court are concerned.   We have not intended, in any
subsequent cases, to cast a doubt upon the soundness of
the decision in *Crosby v. Roub ;* neither have we deemed
it necessary to re-affirm that case, whenever it has been
criticised or commented on in the discussions at this bar.
True, since that decision was rendered, the supreme court
of the state of Iowa has had occasion to pass upon the
same question as there presented, and that court reached
a different conclusion.   That court held that the transfer

of the note and mortgage, made in the body of the railroad bond, which is a separate instrument, although intended to transfer the note and mortgage, yet was not a good and sufficient indorsement of the note within the law merchant to pass the legal title so as to exclude the equities of the original parties. *Franklin v. Twogood*, 18 Iowa, *515*; *Same Case*, 25 id. *520*. Of course, a decision of so high and respectable a court as the' supreme court of Iowa, adverse to the ruling in *Crosby v. Roub*, would strongly incline us to reëxamine that case, were we not quite well satisfied with the conclusion already arrived at. But we still think that by the mode of transfer resorted to, as well in that case as the one before us, the parties intended to pass the title and make the note transferable by delivery afterward, as a note payable to order and duly indorsed, and that this contract, like all others which do not contravene any rule of law or public policy, should have effect given to it according to the intent of the parties. And, therefore, we adhere to our views formerly expressed upon this question, that the parties, by the mode of transfer resorted to here, must have intended in a commercial sense to indorse the note, and not merely assign it, and that the indorsement is such as will authorize the holder, who takes it for value, before due, without notice of any defense, to enforce the collection thereof against the maker.

But it is said by the counsel for the respondent, that the evidence in the case shows that the plaintiff is not a holder of the note and mortgage for value, not having received them in the due course of business and paid a valuable consideration therefor. The plaintiff himself testifies upon this point, that he purchased the note and mortgage of his brother, Frederick Bange, prior to the year 1858, paying him seventy-three cents on the dollar therefor, in money, or passing that amount in credits upon his books, on a running account between him and his brother. In other words, it seems that the plaintiff,

when he received the note and mortgage, paid for them in cash at the time, at the rate of seventy-three cents on the dollar; or passed them to the credit of his brother upon a current account absolutely as cash, supposing the securities to be good. They were treated as so much cash in the dealings between the plaintiff and his brother. The plaintiff was doing business in New York city, and Frederick Bange was manufacturing iron in Ulster county, N. Y. The latter drew upon the former to a considerable extent, from a quarter to a half a million dollars, the plaintiff taking care of the drafts and Frederick making remittances. At the time of the purchase of the note and mortgage, Frederick had overdrawn to the amount of from ten to thirty thousand dollars, and the amount of these securities was credited to him, and treated as cash in their transactions. Upon these facts there is no ground for saying that the plaintiff is not a purchaser for value within the rule of commercial law. *Smith v. Tyson*, 16 Peters, 1; *Shufeldt v. Pease*, 16 Wis. 659; *Rice v. Cutler*, 17 id. 355.

It was further insisted that the evidence in the case shows that the note and mortgage were obtained and put in circulation by false and fraudulent representations made to the maker by the agents of the railroad company; and this being so, it is claimed that the rule is well settled that the plaintiff can recover no more than he paid for the securities, and the interest on that amount. The plaintiff purchased the note and mortgage prior to 1858, paying about seventy-three cents on the dollar. The purchase was absolute, and the entire amount which may be recovered on the securities belongs to him. He must be regarded as having taken them in the usual course of business, without knowledge of any equities existing between the original parties, and paying what certainly was a fair and valuable consideration for paper which would not become due until January 1, 1864. In the case of accommodation paper, or where a note has

been misappropriated by a party into whose hands it was placed for a special purpose, it has been held that even a *bona fide* holder, in an action against the maker, should only recover the amount actually advanced. *Wiffin v. Roberts*, 1 Esp. 261; *Jones v. Hibbert*, 2 Stark. 204; *Allaire v. Hartshorne*, 1 Zab. 665. And also, "when the plaintiff is the holder for value and *bona fide*, for a portion only of the amount of the note, and the excess, if recovered by him, would be for the benefit of the payee or other party against whom the defense ought to avail, then the defendant is entitled to the benefit of his defense against the plaintiff as to such excess. To that extent the plaintiff represents the original parties, and the defense is properly allowed to prevent a recovery for their benefit when they would not be entitled to recover for themselves." *Tobey v. Chipman*, 13 Allen, 123; *Tucker v. Jenkes*, 5 id. 330. But in this state, where it has been held that the transfer of a negotiable promissory note, although secured by a mortgage on real estate, to a *bona fide* indorsee, entitles the holder, in an action to foreclose the mortgage, to the protection accorded the holder of commercial paper, we see no ground for applying any such principle, or for saying that the plaintiff, upon the facts of this case, shall only recover the amount he paid for the securities, and interest thereon. Such a rule would certainly deprive the plaintiff of the benefit of the principle first announced, for it would be equivalent to saying that, unless he paid the face of the paper, he was not a holder for value. In no case which has fallen under our observation, analogous in its facts to the one before us, has it been held that the holder must pay the full face of the security in order to be entitled to protection or to constitute him a holder for value. In *Gould v. Segee*, 5 Duer, 260, Justice DUER says: "When a parting with value is proved, the amount of the consideration is not otherwise important than as bearing upon the question of actual or constructive notice." Here we

must assume that the plaintiff paid what the securities were reasonably and fairly worth. And to hold that he can only recover the amount he paid would be establishing a rule which would deprive all paper of this character, which for any cause was not worth its face, of one of the most essential and valuable incidents of negotiability, and effectually put a stop to its circulation. RANNEY, J., in *Baily v. Smith*, 14 Ohio St. 396–403. Under the circumstances, we think the plaintiff cannot be limited in his recovery to the amount he actually paid, and interest thereon, but that he is entitled to recover the full amount due upon the note and mortgage.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded, with directions to enter judgment for the plaintiff for the amount due.