KELLOGG VS. STEINER.

*Evidence of forgery.　Promissory note, when void in hands of innocent party.*

1. Where the question litigated was, whether the note in suit, running to "A. or bearer," was a forgery, and there was no pretense that the defendant ever executed more than one note to A., it was error to exclude testimony tending to show that the witness was present when defendant made *a* note running to A., and that the words "or bearer" were erased from the printed form used, before defendant's signature was affixed.

2. Where one is induced by fraud, *without laches* on his own part, to sign a negotiable note supposing it to be a non-negotiable instrument, such note is invalid even in the hands of an innocent third party.

APPEAL from the Circuit Court for *Dodge* County.

Action upon a promissory note payable to W. S. Coffman, or bearer. The plaintiff claimed as a purchaser in good faith and for value, before maturity. The defendant, by his verified answer, denied the execution of the note, and alleged that, at about its date, he made an agreement with Coffman, whereby the latter was to send him a sample of a patented hand seeding machine, and furnish him with as many machines as he could sell, and he was to sell as many as he could in his town for $15 each, and to pay for them at the rate of $6 each, when he had sold enough to entitle himself to $300, but in no case to pay sooner than one year from date; and that, to secure the payment to Coffman of the amount to be paid him, he executed and delivered a note for $200 payable to Coffman *alone*, and not to his order or to bearer, twelve months from date; and that such agreement was the sole and only consideration for such note; and further alleged Coffman's failure to send him a sample machine or any other machine, in consequence of which he had not sold any. He also filed an affidavit denying the execution of the note in suit, and alleging that it was forged.

The testimony on the part of the plaintiff tended to show that the defendant signed the note in the form in which it

was presented in evidence; that it had not been altered since its execution; and that the plaintiff purchased it for value before maturity. No evidence was given by the plaintiff as to the consideration of the note.

The defendant testified in his own behalf, denying that he executed the note in suit, but stating that he signed one for the same amount and to the same effect except that the words, "or bearer" were stricken out from the printed blank. He also offered proof of the agreement which was the consideration for the note, but the court excluded it. ·

The deposition of the defendant's son, to the effect that he was present, when his father gave a note to Coffman for $200, at about the time when the note in suit purported to have been given, and that it was written on a printed blank and the words "or bearer" and some words about interest were stricken out before signing, after some conversation relating thereto, was also offered in evidence, but excluded by the court, upon the plaintiff's objection that it did not show that the signature to the note in court was not the signature of the defendant, and it was therefore immaterial.

The jury brought in a verdict for the plaintiff for the amount of the note and interest; a motion for a new trial was overruled, and judgment entered in accordance with the verdict, from which the defendant appealed.

*L. T. Fribert*, for appellant.

*Rising & Hays*, for respondent:

The only issue was, whether the defendant signed the note in suit, and the evidence was properly confined to that. 1 Greenl. Ev., § 51. The deposition of the defendant's son related to another note. 2. The evidence relative to the agreement, alleged to have been the consideration of the note, was inadmissible without proof of knowledge thereof on the part of the plaintiff, or sufficient notice to put him on inquiry. *Williams v. Holmes*, 2 Wis., 129; *Jones v. Lake*, 2 Wis., 210.

DIXON, C. J.   The court below held, and probably rightly, in view of the course pursued by the defendant at the trial, that the only question before the court and jury was as to the genuineness of the signature to the note on which the suit was brought.   The record makes the court to have ruled that such was the only issue presented by the pleadings, which was hardly correct, inasmuch as the answer was broad enough to put in issue a fraudulent alteration of the note by the insertion of the words, "or bearer" after its execution, and so to have shown a good defense to the action notwithstanding the signature was proved to be genuine.   The sole effort of the defendant at the trial was, however, to establish the forgery, and in that light the ruling of the court was doubtless proper enough.

But, conceding that such was the only issue, we are still of opinion that the court was wrong in excluding the deposition of the witness, John D. Steiner, or those parts of it which were not admitted.   That witness was present at the house of the defendant, his father, on the day when *the* note or *a* note for two hundred dollars, payable to Coffman in one year, was executed by the defendant and delivered to the witness, Hines, whose deposition was taken in the state of Michigan, and who, as appears from the testimony of the defendant and his son, at the time the note was given, either personated W. S. Coffman, the payee, or passed under that assumed name.   There was no pretense at the trial that any but one such note was ever executed by the defendant, or that any transaction of the kind ever took place between the parties except that at which the son testified that he was present.   He testified, in the part of the deposition which was excluded, quite positively, that in the note which the defendant signed, and which was filled up on a printed blank, the word "bearer," or the words "or bearer," were stricken out before the signature was affixed. Was this not competent evidence to be received and considered by the jury, upon the question whether the signature of the

note in suit was genuine or not? In the note in suit, which was also upon a paper partially printed and partially written, the words "or bearer," printed, appeared never to have been erased. Bearing in mind that there was but one note executed, and that the witness was present at the signing and delivery, it appears to this court that the deposition was admissible upon the question of the genuineness of the signature. It was not, it is true, direct testimony upon that question, or of a forgery, but it was circumstantial evidence, and as such entitled to be received. It was testimony to facts, if the jury found them to be proved, from which they might have found that the signature of the note in suit was not genuine. If it were true that but one note was signed by the defendant on that occasion, and that note had the words " or bearer" stricken out, then it could not be true that the defendant at the same time signed the note in suit, from which the same words were never erased. The matters deposed to by the witness, if the jury should believe him, did, therefore, tend to prove that the signature was not genuine; and for that reason the deposition should have been admitted.

To illustrate, we might suppose that the evidence on the part of the defendant had consisted entirely in the testimony of several credible witnesses, who were with him on the day the note given by him was signed, and who saw him sign it, and who should testify that they knew he signed but one note on that day, and that note had the words " or bearer" stricken out. There can be little doubt such testimony would have been admissible, and, being satisfactory to the jury, would have authorized a finding that the signature in question was not genuine. It may be, if the deposition here offered had been received, the jury would have found the witness was mistaken as to the most important fact about which he testified; but that can make no difference upon the point of its admissibility. The defendant was entitled to have it received and considered by the jury for what they should deem its value as evidence. The

weight and effect of it upon the question of genuineness in issue were for the jury to determine.

The examination of the facts set up in the answer and testified to by the defendant and his son, supposing them to be true, or that a jury might so find, has suggested to our minds that there may, possibly, be a defense not distinctly stated in the answer, though implied from it, which if so stated and proved, would be available to the defendant even as against the present plaintiff, notwithstanding the fact was, and the jury should so find, that the defendant actually signed the note in suit, and that it was at the time of signing in the precise form it now appears. If the defendant was tricked into the signing of a negotiable note, when, in fact, he only intended to sign one which was not negotiable, and it was so agreed and understood between the parties, and the paper signed was so represented to him; that is, if the defendant, without any negligence on his part in not ascertaining the true character and contents of the paper, was, by the fraud or artifice of the other party, deceived as to the *character* of the *paper itself*, and signed it in good faith, believing it was a non-negotiable note, when, in fact, it was a negotiable one, the instrument so executed is no more binding upon the defendant in the hands of a third person, to whom it was transferred before maturity and for value, without notice, than it would have been had it remained in the possession of the party by whose fraud or wrong it was thus obtained. A party whose signature is so procured to a negotiable note when a non-negotiable note was intended, and who was guilty of no *laches* or want of proper care in not finding out its true character, is no more bound by the negotiable character of the instrument than he would be if a receipt had been intended and he had been beguiled into the signing of a promissory note or a bill of exchange. Notes of the kind, negotiable and not negotiable, although much alike in form, so that fraud might be the more easily practised, yet differ very widely in their nature and the effect ascribed to them by law;

so widely, in fact, that no two instruments for the payment of money could be much more unlike. If, therefore, the defendant signed the note in suit under such circumstances, and the facts on his side should be clearly and satisfactorily made out, which should always be required in such case, a good defense to the action would probably be shown, notwithstanding the genuineness of the signature. A full discussion of the principles of law applicable to such a defense will be found in the case of *Walker v. Ebert, ante,* p. 194.

These remarks have been prompted by what have seemed to this court as some strong circumstances of fraud disclosed by the record, with respect to the mode by which the note in suit was procured from the defendant. These prowling peddlers of worthless patents have of late become the scourge of our entire farming community, by their tricks and roguish devices, entrapping innocent and inexperienced persons into putting their names to negotiable notes, when the execution of a wholly different kind of instrument was intended. So great had this evil become, that the legislature, at its last session, as we are informed, passed a stringent law upon the subject. The frauds which have been thus perpetrated, have, no doubt, been very great; and whilst we thus allude to them, we do not at the same time forget the fact, that the plaintiff in this case is or may be an entirely innocent holder for value of the note, and as such, in no way responsible for the fraud, if any, which was perpetrated upon the defendant. If he be such holder, his position is a most favored one in the law; and in that case, on account of the facility and temptation to falsehood, the jury are to be admonished to scrutinize the defense clearly, and that it ought not to prevail unless clearly and satisfactorily established by the testimony of good and credible witnesses. The makers of such notes, although entitled to one's strongest sympathies, are yet not entitled to saddle the consequences of their own carelessness or indifference, or want of proper caution and foresight to protect themselves, upon innocent third persons.

In *McIndoe v. Morman*, 27 Wis., 588, this court held there might be an amendment of the answer, in the discretion of the circuit court, after the judgment was reversed here, and the cause remanded for further proceedings. It rests with the court below, upon proper terms, to allow such an amendment in this case, if formal application therefor shall be made by the defendant.

*By the Court.*— Judgment reversed, and a *venire de novo* was awarded.